479 P.2d 348

**DOXEY–LAYTON COMPANY,
Plaintiff and Respondent,**

v.

**Brigham G. HOLBROOK and Betty Holbrook, his wife, Defendants
and Appellants.**

**No. 12021.**

Supreme Court of Utah.

Jan. 6, 1971.

Ellett, J., did not participate.

Louis M. Haynie, Salt Lake City, for defendants-appellants.

Lewis S. Livingston, Salt Lake City, for plaintiff-respondent.

CALLISTER, Chief Justice:

Defendants appeal from a decree of foreclosure on a real estate mortgage securing an indebtedness of $116,329.55, which the trial court found due and owing to plaintiff.

Defendants have resided out of Utah for many years, while employed by the federal government. In 1963, they procured a building site in Salt Lake City and determined to construct an apartment house. Defendants contacted plaintiff, a mortgage-broker, to secure a 20-year loan of $120,000 at 6% interest. Plaintiff was represented by its loan officer, Mr. Teerlink, in this transaction. There is a marked divergence in the testimony of the opposing parties. At the conclusion of the trial, the court stated that it was ruling totally against the defendants.

Mr. Holbrook testified that sometime in September of 1963, he and his wife signed in blank a mortgage note and mortgage, which he delivered to Mr. Teerlink. He claimed that Mr. Teerlink had informed him that long-term financing with Mutual of New York had been arranged. Mr. Holbrook insisted that all vital points, such as interest rate, commission, term and amount of the loan, had been settled; yet he signed blank documents. Shortly after

signing the papers, Mr. Holbrook departed for Mexico City. He testified that he first learned that he had not received long-term financing in October of 1964. The testimony of Mrs. Holbrook was similar to her husband's.

Mr. Teerlink testified that plaintiff loans funds but sells the paper to banks or insurance companies. In this particular instance, plaintiff issued a one-year construction loan commitment prior to obtaining a take-out loan. He explained that during the negotiations, the parties had discussed a 20-year loan. However, Mr. Holbrook was anxious to commence construction, and plaintiff had been unable to procure a commitment; so plaintiff made a temporary one-year construction loan to defendants. Mr. Teerlink testified that he had made it clear, prior to Mr. Holbrook's departure, that there was no permanent financing.

Mr. Teerlink testified that on November 18, 1963, the date of the note, Mrs. Holbrook brought the note and mortgage upon which Mr. Holbrook's name had previously been signed to plaintiff's office. At this time, Mr. Teerlink filled in the blanks including the following terms:

Payable in full on or before November 18, 1964. Construction mortgage note only.

Mr. Teerlink testified that he and Mrs. Holbrook reviewed the terms, and then she signed the documents; these facts she denies.

It is undisputed that the defendants subsequently executed four short-term renewal notes, each granting an extension of time for payment. Furthermore, each of the renewals was dated November 18, 1963, and each was completed with all of its terms, prior to defendants affixing their signatures.

On appeal, defendants urge that they are entitled to reformation of the note to conform with the terms and conditions of the agreement between the parties, namely, a 20-year mortgage, and that the decree and judgment of the trial court should be reversed.

Defendants assert that at no time did Mr. Teerlink testify that he was authorized by Mr. Holbrook to fill in the note as he did. Defendants, therefore, conclude that this change in the time of payment constitutes a material alteration of an instrument as provided in Sec. 44–1–127(3), U.C.A. 1953, repealed 1965.

Since the parties entered into this transaction prior to midnight on December 31, 1965,[1] the Negotiable Instruments Law, Chapter 1, Title 44, U.C.A. 1953, repealed 1965, is applicable.

1. 70A–10–101, U.C.A.1953, as amended 1965.

Sec. 44–1–15, U.C.A.1953, repealed 1965, provided:

Where an instrument is wanting in any material particular the person in possession thereof has prima facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as prima facie authority to fill it up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. * * *[2]

Sec. 44–1–127, U.C.A.1953, repealed 1965, provided:

Any alteration, which changes:

* * * * * *

(3) The time or place of payments; or

* * * * * *

Or any other change or addition which alters the effect of the instrument in any respect;—

Is a material alteration.[3]

In Republic National Bank of Dallas v. Strealy[4] the court compared Sections 14 and 125 of the Negotiable Instruments Law, and observed:

In order to resolve the seeming conflict between Sections 14 and 125 it is necessary to become involved in semantics. Section 125 talks only of "changes" and "additions" which constitute a material alteration. Section 14 deals with "completions" by filling up blank spaces left in the instrument. In construing this language it appears probable that the Legislature intended "changes" to mean the marking out, erasing, detaching, or writing over of parts of an already completed instrument, and the word "addition" to mean the insertion of a new clause or wording where no blank is provided. * * * We believe that Section 125 is not applicable to completing a note by filling in of blanks.

* * * * * *

* * * In order to harmonize these two sections of the Negotiable Instruments Act, we must say that the filling in of blank spaces is not an alteration; therefore, in cases involving the filling in of blanks left in negotiable instruments, Section 14 must be applied.[5]

2. This provision is substantially identical to Sec. 14 of the Negotiable Instruments Law, Uniform Act.

3. This provision is identical to Sec. 125, Negotiable Instruments Law, Uniform Act.

4. 163 Tex. 36, 350 S.W.2d 914 (1961).

5. Also see Plescia v. Humphries, 121 Utah 355, 241 P.2d 1124 (1952).

Defendants have vigorously asserted that Mr. Holbrook did not authorize Mr. Teerlink to insert the date of payment in the blank. The court responded to a similar argument in Republic National Bank of Dallas v. Strealy[6] as follows:

* * * The testimony that the respondent did not give Glenn express authority to fill in the note amounts to no more than evidence that there was no agreement with reference to the filling in of the place of payment in the blank space. This is not sufficient to rebut the authority given by the statute to the possessor of the note. It can only be overcome by evidence of an express agreement as to a particular place of payment, or that no place shall be filled in.

Sec. 44–1–15, U.C.A.1953, repealed 1965, conferred upon Mr. Teerlink, to whom possession of the note was delivered, authority to complete the blanks in the mortgage note. This statutory presumption can only be rebutted by proof that the paper was not completed in accordance with the authority granted by express agreement. However, in the instant action, the question of whether there was an express agreement, which limited Mr. Teerlink's authority to fill in the time of payment to a period specified, became irrelevant by the subsequent action of the Holbrooks. The defendants, by their own admission, executed four extensions of the original note, after they had actual knowledge of the term of payment. Thus defendants indicated their ratification of the manner in which Mr. Teerlink had completed the note.[7]

Judgment of the trial court is affirmed; costs are awarded to plaintiff.

TUCKETT, HENRIOD and CROCKETT, JJ., concur.

ELLETT, J., does not participate herein.

6. Note 4, supra, at p. 919 of 350 S.W. 2d.

7. See Peters & Whalen, Inc. v. Ware, 4 Misc.2d 789, 162 N.Y.S.2d 951 (1956).